IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CT-3264-FL
NO. 5:14-CT-3104-FL

| | | |
|---|---|---|
| FERNANDO PALMA CARIAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| DONNIE HARRISON, Sheriff; E.A. | ) | |
| BLOMGREN, Investigator; JAMES | ) | |
| MICHAEL CORNAIRE, Deputy | ) | |
| Sheriff; NARDINE MARY | ) | |
| GUIRGUIS; DRUG ENFORCEMENT | ) | |
| AGENCY DIRECTOR; UNITED | ) | |
| STATES IMMIGRATION AND | ) | |
| CUSTOMS ENFORCEMENT | ) | |
| AGENCY DIRECTOR; | ) | |
| CHRISTOPHER BRANT; TOM | ) | |
| HALVAS; UNIDENTIFIED | ) | |
| INDEMNITOR FOR WAKE | ) | |
| COUNTY; WILLIAM ATWELL; | ) | |
| LANCE ANTHONY; MICHAEL | ) | |
| WILLIAMS; D. TAYLOR; and K. | ) | |
| MANNING,[1] | ) | |
| | ) | |
| Defendants. | ) | |

These consolidated cases are before the court on certain defendants' motions to dismiss (DE

54, 76, 88),[2] to which plaintiff responded, including in such response a motion for continuance to

---

[1] The party plaintiff previously referred to as the "unidentified ICE agent" is Tom Halvas. (See Pl.'s Resp. p. 4.) The clerk is DIRECTED to amend the court's caption to reflect this change. The court has constructively amended the caption of this order to omit defendants previously terminated, and to reflect all defendants in the consolidated cases.

[2] Pursuant to the court's May 11, 2015, consolidation order all docket entries after that date shall be docketed only in the lead case, No. 5:13-CT-3264-FL. All docket entry numbers referenced in citations herein thus refer to docket entries in case No. 5:13-CT-3264-FL, unless otherwise specified.

conduct discovery (DE 96). Also before the court is plaintiff's motion to appoint counsel (DE 99). In this posture, the matters are ripe for adjudication.

## BACKGROUND

For ease of reference the case background as set forth in the court's May 11, 2015, order is set forth below.

On October 25, 2013, plaintiff instituted the action captioned Carias v. Harrison, 5:13-CT-3264-FL (E.D.N.C. Oct. 25, 2013) ("Carias I"), pursuant to 42 U.S.C. § 1983, against defendants Wake County Sheriff Donnie Harrison ("Harrison"), Wake County Investigator E.A. Blomgren ("Blomgren"), and Wake County Deputy Sheriff James Michael Cornaire ("Cornaire"). Plaintiff alleges that these defendants violated his constitutional rights in the course of arresting plaintiff. The court subsequently entered an order allowing plaintiff to proceed with his action.

On April 28, 2014, plaintiff instituted the action captioned Carias v. the Drug Enforcement Agency, 5:14-CT-3104-BO (E.D.N.C. Apr. 28, 2014) ("Carias II"), pursuant to Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), against defendants the Drug Enforcement Agency ("DEA"), DEA Agent William Atwell ("Atwell"), DEA Agent Lance Anthony ("Anthony"), DEA Agent Michael Williams ("Williams"), DEA Agent D. Taylor ("Taylor"), and DEA Agent K. Manning ("Manning"). Plaintiff alleges in his Bivens action that defendants violated his constitutional rights by failing to protect him from being exposed as a confidential informant.

In July 2014, plaintiff filed motions to amend his complaint in both Carias I and II. On November 6, 2014, the court, in Carias I, granted plaintiff's motion to amend his complaint to include a retaliation claim against Wake County Sheriff's Office Investigator Dwight Yokum ("Yokum") as a matter of course pursuant to Federal Rule of Civil Procedure 15(a). In the same order, the court conducted a frivolity review of plaintiff's amended complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and dismissed without prejudice plaintiff's retaliation claim against Yokum. As for plaintiff's motion to amend filed in Carias II, the court entered an order allowing plaintiff's complaint and amended complaint to proceed against the DEA agents individually, but dismissing the [former] United States Attorney

2

General Eric Holder [("Holder")] and the DEA from this action. The court in <u>Carias</u> II also construed plaintiff's claim as one pursuant to the Fourteenth Amendment to the United States Constitution, because the challenged conduct occurred prior to plaintiff's state incarceration.

On December 19, 2014, defendants in <u>Carias</u> II filed a motion to dismiss plaintiff's action pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed.

Ten days later, plaintiff filed a second motion to amend his complaint in <u>Carias</u> I, seeking to add the defendants named in <u>Carias</u> II, as well as Wake County, the unidentified indemnitor for Wake County, James Michael Cornaire, the Director of the DEA, Nardine Mary Guirguis [("Guirguis"), Harnett County, the United States Immigration and Customs Enforcement ("ICE") Director, Christopher Brant [("Brant")], and [Tom Halvas ("Halvas")]. After permitting defendants additional time to respond, defendants responded to plaintiff's motion to amend and opposed the addition of new parties. Plaintiff then filed a motion for reconsideration of the court's order granting defendants in <u>Carias</u> I an extension of time to respond to plaintiff's motion to amend.

On January 12, 2015, plaintiff in <u>Carias</u> II filed his motion to consolidate <u>Carias</u> I and II. In response, on February 13, 2015, defendants in <u>Carias</u> II filed a notice of related cases in both <u>Carias</u> I and II, and stated that they do not oppose plaintiff's motion to consolidate on the grounds that <u>Carias</u> I and II are so substantially similar as to not warrant repetition of the parties' and courts' efforts.

(DE 44.)

On May 11, 2015, the court entered an order granting plaintiff's motion to consolidate <u>Carias</u> I and II. The court also granted plaintiff leave to amend his complaint, and directed plaintiff to file one amended complaint in the lead case <u>Carias</u> I. Because the court permitted plaintiff to amend his complaint, the court denied as moot the motion to dismiss defendants filed in <u>Carias</u> I.

On June 3, 2015, plaintiff filed his particularized pleading. Plaintiff named Harrison, Cornaire, Anthony, Blomgren, Guirguis, the DEA Director, Atwell, Taylor, Manning, Officer

3

Michael Williams ("Williams"), the ICE Director, Brant, Halvas, Holder, and the unidentified indemnitor for Wake County as defendants. Plaintiff alleged claims pursuant to 42 U.S.C. §§ 1983, 1981, and Bivens. Plaintiff alleged the following claims against defendants: (1) excessive force and failure to protect in violation of the Eighth and Fourteenth Amendments to the United States Constitution; (2) due process claims pursuant to the Fifth and Fourteenth Amendments; (3) involuntary servitude in violation of the Thirteenth Amendment; (4) illegal search and seizure in violation of the Fourth Amendment; (5) extortion in violation of the Hobbs Act under 18 U.S.C. § 1951; (6) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962; (7) violations of the Unfair and Deceptive Trade Practices Act ("UDTPA"), N.C. Gen. Stat. § 75–1; and (8) violations of North Carolina's Constitution, Article I §§ 17, 19, 27. (Am. Compl. p. 9.) As relief, plaintiff sought monetary damages as well as declaratory and injunctive relief. (Id.)

On July 2, 2015, the court entered an order in which it allowed plaintiff to proceed with his Bivens and § 1983 claims against the defendants named in plaintiff's June 3, 2015, amended complaint. The court dismissed without prejudice any defendants plaintiff named in any previous complaints, but did not name in his June 3, 2015, amended complaint. The court also granted defendants' May 6, 2015, motion for an extension of time to respond to plaintiff's request for admissions, filed in Carias II, and denied defendants' May 6, 2015, motion to stay filed in Carias II. On July 19, 2015, defendant Manning, one of the DEA agents named in the amended complaint, filed the instant motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed. On August 25, 2015, defendant Guirguis, an attorney who had represented plaintiff in

4

certain prior legal matters, filed the instant motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motion was fully briefed.

On October 13, 2015, defendants Anthony, Atwell, Brant, the Drug Enforcement Agency Director, Holder, D. Taylor, Halvas, ICE agency director, the United States, and Williams (collectively referred to as the "federal defendants") filed the instant motion to dismiss plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rules of Civil Procedure 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).[3] Alternatively, these defendants moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. Plaintiff responded in opposition and included in such response the instant motion for continuance to conduct discovery.

Plaintiff filed the instant motion to appoint counsel on March 15, 2016.

### STATEMENT OF FACTS

Plaintiff, a state inmate, currently is incarcerated for shooting and killing his common law wife Marisol Rojas ("Rojas). (Mem. in Supp. of Am. Compl. p. 15.) Prior to killing Rojas, plaintiff immigrated from Honduras to the United States in 1992. (Id. p. 10.) By 2007, plaintiff owned and operated three businesses under the name "Mexico-Lindo." (Id.) Plaintiff's businesses included a "money transfer service," a grocery store, and "another [] store." (Id.) In 2007, defendant Cornaire approached plaintiff and informed plaintiff that he was under investigation by the DEA for money laundering. (Id. pp. 12-13.) Plaintiff then accompanied Cornaire to the Raleigh DEA office. (Id. p. 13.)

---

[3] The state and county defendants named in the amended complaint (Harrison, Blomgren, Cornaire, and the Unidentified Indemnitor for Wake County) have not at this time filed any dispositive motions.

At the Raleigh DEA office, plaintiff and defendant Cornaire were joined by defendant Atwell. (Id.) Cornaire and Atwell accused plaintiff of illegally laundering money for a Mexican drug cartel and threatened to "put [plaintiff] in jail on criminal charges and hav[e him] deported back to Honduras." (Id.) Defendants Cornaire and Atwell also told plaintiff that in exchange for serving as a DEA confidential informant ("CI"), plaintiff would receive immunity from prosecution "arising out of the investigation of the Mexican drug cartel," payment for his services, protection from "harms way," and American citizenship for he and his family. (Id. pp. 13, 14.) Plaintiff responded that he was not interested in being a CI. (Id. p. 13.) Defendant Atwell then began to "scream and yell" at plaintiff and threatened plaintiff with "prison for many years" if he did not cooperate. (Id.) Plaintiff ultimately agreed to serve as a CI, but did not disclose his role to anyone. (Id. pp. 13-14.)

Defendant Cornaire and plaintiff subsequently developed a friendship and began to spend time both together and with each others' families. (Id. p. 14.) At some point, defendant Cornaire "began to realize how much money [plaintiff] was transferring from [his] business to other designations via wire, and in consideration of other monies seized by DEA through [his] assistance, [Cornaire] began to demand large sums of money from [plaintiff] on a regular basis." (Id.) Cornaire asked plaintiff not to tell any law enforcement officer about the money he was receiving from plaintiff. (Id. p. 15.)

On one occasion during this time period, plaintiff suspected a house guest of attempting to steal "some expensive O.J. equipment." (Id.) Plaintiff called both the police and defendant Cornaire for assistance, and Cornaire arrived at plaintiff's house first. (Id.) Cornaire then conducted a search of the house guest's personal property and discovered a handgun, which Cornaire gave to plaintiff.

(Id.) Plaintiff tried to decline Cornaire's offer, but Cornaire insisted that plaintiff take the gun. (Id.) Plaintiff later used the same handgun to kill his common law wife, Rojas. (Id.)

At one point, plaintiff received a large sum of money from Serafin Castaneda ("Castaneda"), a DEA target. (Id. p. 16.) Defendant Atwell instructed plaintiff to deposit the money from Castaneda into plaintiff's business account "and to refuse the transfer and return [Castaneda's] money by a check from [plaintiff's] business account, and to forward a copy of that check to the DEA." (Id.) Before plaintiff could deposit the money from Castaneda into his business account, defendant Cornaire demanded that plaintiff give him $5,000.00, and plaintiff acquiesced. (Id.) Plaintiff replaced the missing $5,000.00 with his own money. (Id.) Plaintiff told Cornaire that the money at issue was cartel money and that plaintiff could be killed for stealing the money, but Cornaire responded that he did not care. (Id.)

Plaintiff "complained to the DEA Director and others that they were putting [his] life in danger." (Id.) Plaintiff's attorney also voiced similar concerns on plaintiff's behalf. (Id.) In response, the DEA Director directed defendants Taylor and Manning to install audio and video surveillance equipment throughout plaintiff's residence. (Id.) Defendant Anthony then "forced [plaintiff] to sign a new contract with [Anthony] against [plaintiff's] will by threats of deportation." (Id.) Plaintiff states that there were several occasions in which his CI duties put his life in danger, and his identity as a CI was nearly discovered by cartel members. (Id. p. 17.) On one occasion after plaintiff's identity was nearly discovered, plaintiff informed the DEA defendants and his attorney that he no longer wanted to serve as a CI. (Id.) In response, defendants Anthony, the DEA Director, and Williams threatened to have plaintiff arrested and deported if he did not continue to serve as a CI. (Id.)

After approximately one and a half years, the director of ICE became aware of the "valuable assistance" regarding the Mexican drug cartel that plaintiff was providing the DEA and wanted "a piece of the action." (Id. p. 18.) Accordingly, defendants Brant and Halvas arrested plaintiff while plaintiff was at the DEA's office. (Id.) The officers placed plaintiff in a government sedan and drove him to a "private unfamiliar area and stopped the vehicle." (Id.) Brant called plaintiff a "Damn Immigrant" and stated "you now work for ICE from now on." (Id.) Plaintiff then informed the agents that he had a signed contract with the DEA. (Id.) Brant then became "livid" and began "punching [plaintiff] in the stomach and crotch . . . while [plaintiff] was in handcuffs." (Id.) Brant threatened to kill plaintiff and then both ICE officers began punching plaintiff in the "back, stomach, and legs." (Id.) The officers also threatened plaintiff with deportation and plaintiff ultimately agreed to cooperate with the ICE agents. (Id.) Plaintiff informed defendant Guirguis of the ICE agents' actions, but she did nothing. (Id.)

Following the incident with the ICE agents, plaintiff was incarcerated at the Wake County Jail, and ultimately was transferred to the Stewart Immigration Detention Center in Atlanta where plaintiff was awaiting deportation proceedings. (Id.) Plaintiff then called defendant Cornaire, and Cornaire agreed to retrieve plaintiff from the Atlanta detention center in exchange for $400.00. (Id.) Plaintiff also called his attorney, defendant Guirguis, who charged plaintiff $7,500.00 for her legal assistance. (Id.)

When plaintiff returned to Raleigh, he resumed contact with the DEA and continued to act as a CI for the agency. (Id. p. 19.) The DEA "continued to reaffirm the guarantee of providing [plaintiff] with [] permanent citizenship or green card and payment for [his] services." (Id.) During this time period, defendant ICE director ordered his subordinates, defendant Brant and Halvas, to

8

periodically antagonize, harass, and threaten plaintiff even though plaintiff provided ICE information as well. (Id.) The ICE agents told plaintiff that he was providing the DEA "all the good stuff." (Id.) At one point, ICE revoked plaintiff's immigration status "for no reason and sent [plaintiff] to jail." (Id.) Plaintiff was not able to run his business while in jail and he lost income. (Id.) The DEA director was aware of plaintiff's circumstances and did nothing to assist. (Id.) Upon his arrest, plaintiff had to pay his attorney, defendant Guirguis, $4,000.00 to assist him in immigration court. (Id.) Plaintiff also asked Guirguis to help him obtain his American Citizenship or a green card so that he could disassociate himself from both the DEA and ICE. (Id.) Guirguis guaranteed plaintiff permanent American citizenship status if plaintiff paid $5,000.00, and plaintiff complied. (Id.) Guirguis then continued to string plaintiff along "charging [him] $2,000.00 here and $2,000.00 there." (Id.) Guirguis also convinced plaintiff to continue providing both ICE and the DEA CI services in order to "enhance his chances." (Id.) Guirguis required that all payments be made in cash. (Id.)

At some point, Guirguis assisted plaintiff in drafting an immunity contract with the DEA. (Id. p. 20.) Plaintiff also signed a contract with ICE during this time period. (Id.) Guirguis was not involved with the contract between plaintiff and ICE. (Id.) Plaintiff subsequently was arrested by ICE because defendant Guirguis failed to inform him of a court date. (Id.) Guirguis also failed to appear on plaintiff's behalf during an immigration proceeding. (Id.) During another immigration proceeding, the presiding judge counseled Guirguis regarding her "excessive continuances." (Id.) When plaintiff later questioned Guirguis regarding the continuances, she demanded an additional $2,000.00. (Id.) Guirguis threatened plaintiff that if he did not continue to give her more money, plaintiff would be deported. (Id.) Plaintiff ultimately paid Guirguis $30,000.00 "to attain [his]

9

American citizenship." (Id.) Guirguis also charged plaintiff $5,000.00 to witness a new contract that defendant Anthony put together after defendant Atwell retired. (Id.)

At some point, defendant Cornaire convinced plaintiff to take out life insurance policies on himself and Rojas. (Id.) Cornaire later convinced plaintiff to increase his policy from one million to two million dollars and to make defendant Cornaire the beneficiary of both plaintiff and Rojas' wills. (Id.) Plaintiff then became suspicious that Cornaire would kill him in order to get an inheritance, and began to keep "more accurate records" of the money he paid to Cornaire. (Id. p. 21.) Cornaire continued to remind plaintiff not to tell ICE or DEA agents of the money plaintiff was giving Cornaire. (Id.)

At some point, defendant Anthony informed plaintiff that Rojas was "sleeping with DEA target identified as Francisco-Texta Palacious." (Id.) Plaintiff informed Anthony that he "wanted to quit and take [his] children and move on." (Id.) Plaintiff told Anthony that he was going to leave Rojas. (Id.) In response, Anthony told plaintiff that plaintiff had a contract and that if plaintiff did not befriend the target and collect information, plaintiff would lose his business, family, and face deportation. (Id.)

One day Rojas approached plaintiff and screamed "you disloyal snitch!!" (Id. p. 22.) Rojas informed plaintiff that defendant Cornaire had told her that plaintiff was working with the DEA and ICE, and that Rojas was "gonna one day lose everything." (Id.) Plaintiff then called defendant Williams and stated that he needed protection because Cornaire told Rojas that plaintiff was working for the DEA. (Id.) Williams told plaintiff to go home and "make up an excuse." (Id.) Plaintiff then contacted defendant Anthony, and Anthony reassured plaintiff that everything would be fine and that he did not believe Cornaire told Rojas anything. (Id.) Anthony told plaintiff to go home "and not

to worry because they would be watching.  [Plaintiff] trusted [Anthony] because of the hidden audio/video DEA had installed in [plaintiff's] residence."  (<u>Id.</u>)

When plaintiff returned home, he and Rojas began to argue and Rojas grabbed a machete.  (<u>Id.</u>)  Rojas threatened to kill plaintiff, and cut the tip off of plaintiff's finger with the machete.  (<u>Id.</u> p. 23.)  Plaintiff then retrieved the gun Cornaire had given him.  (<u>Id.</u>)  Plaintiff shot and killed Rojas.  (<u>Id.</u>)  Plaintiff next ran out of the house and contacted Anthony and Williams to tell them what happened.  (<u>Id.</u>)  Plaintiff asked the officers to review the surveillance video from his house in order to exonerate his actions.  (<u>Id.</u>)  However, defendants Taylor and Manning had removed the surveillance equipment from plaintiff's house.  (<u>Id.</u>)  Plaintiff states that defendant Holder implemented a policy known as "Fast and Furious," which systemically took advantage of illegal immigrants.  (<u>Id.</u> ¶¶ 53, 54.)

## DISCUSSION

A.    Motion for Continuance

Before addressing the motion for summary judgment filed by the federal defendants, the court first considers plaintiff's request for a continuance to conduct discovery pursuant to Federal Rule of Civil Procedure 56(d).  "As a general rule, summary judgment is appropriate only after adequate time for discovery."  <u>Evans v. Techs. Applications & Serv. Co.</u>, 80 F.3d 954, 961 (4th Cir. 1996) (quotation omitted).  Rule 56(d) provides:

> If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order.

Fed. R. Civ. P. 56(d).  Thus, Rule 56(d) allows a court to delay ruling on a motion for summary judgment if the nonmoving party requires discovery to identify "facts essential to justify the party's opposition."  Crawford-El v. Britton, 523 U.S. 574, 599 n.20 (1998) (quotation omitted).  However, "Rule 56(d) affidavits cannot simply demand discovery for the sake of discovery."  Hamilton v. Mayor & City Council of Baltimore, 807 F. Supp. 2d 331, 342 (D. Md. 2011) (internal quotation omitted).  "Rather, to justify a denial of summary judgment on the grounds that additional discovery is necessary, the facts identified in a Rule 56 affidavit must be essential to [the] opposition." Id. (quotation and citation omitted).  A non-moving party's Rule 56(d) request for discovery is properly denied "where the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment."  Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 954 (4th Cir. 1995).

Here, plaintiff states that the moving defendants have not provided plaintiff with any of the discovery material plaintiff requested even after plaintiff filed requests pursuant to the Freedom of Information Act.  (Pl.'s Resp. (DE 96), p. 9.)  Accordingly, plaintiff states that he has not been permitted to fully develop his claims and opposition to summary judgment.  (Id.)  Thus, plaintiff's motion for a continuance to conduct discovery is GRANTED, and the court declines to construe the instant motion as one for summary judgment and construes it only as a motion to dismiss pursuant to Rule 12(b)(1), (6).  The court reminds the federal defendants that it is the responsibility of the party seeking summary judgment to present to the court the basis for the motion and to identify the parts of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); see Fed. R. Civ. P. 56(c)(1)(A) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by [ ] citing to particular parts

of materials in the record. . . .").  Finally, the court finds it appropriate to extend the case management deadlines for the federal defendants to accommodate discovery.  The discovery deadline for the federal defendants now is May 2, 2016, and the dispositive motion deadline now is June 2, 2016.

B.    Motion to Appoint Counsel

Plaintiff moves for appointment of counsel to assist with litigating this action.  This is plaintiff's third motion to appoint counsel.  As stated in the court's previous orders denying plaintiff's requests for counsel, there is no constitutional right to counsel in civil cases, and courts should exercise their discretion to appoint counsel for *pro se* civil litigants "only in exceptional cases."  Cook v. Bounds, 518 F.2d 779, 780 (4th Cir. 1975).  The existence of exceptional circumstances justifying appointment of counsel depends upon "the type and complexity of the case, and the abilities of the individuals bringing it."  Whisenant v. Yuam, 739 F.2d 160, 163 (4th Cir. 1984), abrogated on other grounds by Mallard v. U.S. Dist. Court for the S. Dist. of Iowa, 490 U.S. 296 (1989) (quoting Branch v. Cole, 686 F.2d 264 (5th Cir. 1982)); see also Gordon v. Leeke, 574 F.2d 1147, 1153 (4th Cir. 1978) ("If it is apparent . . . that a pro se litigant has a colorable claim but lacks capacity to present it, the district court should appoint counsel to assist him.").

As stated in the court's previous orders denying plaintiff's requests for counsel, plaintiff has demonstrated through the detail of his filings he is capable of proceeding *pro se*.  Additionally, plaintiff's claim is not complex and is not one in which exceptional circumstances merit appointment of counsel.  Therefore, plaintiff's third motion to appoint counsel is DENIED.

13

C.      Motions to Dismiss

1.      Standards of Review

A Rule 12(b)(1) motion challenges the court's subject matter jurisdiction, and the plaintiff bears the burden of showing that federal jurisdiction is appropriate when challenged by the defendant. McNutt v. Gen. Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Such a motion may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint. Bain, 697 F.2d at 1219. Under the former assertion, as here, the moving party contends that the complaint "simply fails to allege facts upon which subject matter jurisdiction can be based." Id. In that case, "the plaintiff, in effect, is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." Id. "[T]he facts alleged in the complaint are assumed true, and the motion must be denied if the complaint alleges sufficient facts to invoke subject matter jurisdiction." Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the complaint but "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A complaint states a claim if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Asking for plausible grounds . . . does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable

14

expectation that discovery will reveal [the] evidence" required to prove the claim. <u>Twombly</u>, 550 U.S. at 556.

Furthermore, the complaint need not set forth "detailed factual allegations," but instead must simply "plead sufficient facts to allow a court, drawing on 'judicial experience and common sense,' to infer 'more than the mere possibility of misconduct.'" <u>Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.</u>, 591 F.3d 250, 256 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679). In evaluating the complaint, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." <u>Id.</u> at 255 (citations omitted).

When considering a Rule 12(b)(6) motion, a court must keep in mind the principle that "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976)); <u>Noble v. Barnett</u>, 24 F.3d 582, 587 n.6 (4th Cir. 1994). Nevertheless, <u>Erickson</u> does not undermine the requirement that a pleading contain "more than labels and conclusions." <u>Giarratano v. Johnson</u>, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (quoting <u>Twombly</u>, 550 U.S. at 555). Furthermore, while a *pro se* complaint must be construed liberally, it is not the court's obligation "to discern the unexpressed intent of the plaintiff." <u>Laber v. Harvey</u>, 438 F.3d 404, 413 n. 3 (4th Cir. 2006).

2.      Analysis

a.      Hobbs Act

Plaintiff brings claims against defendants pursuant to the Hobbs Act, codified at 18 U.S.C.§ 1951.  The Hobbs Act is a criminal statute which imposes criminal penalties of fines and imprisonment for obstructing, delaying, or affecting commerce by robbery or extortion. 18 U.S.C. § 1951(a).  The authority to enforce § 1951 lies with the federal government, and not private citizens.  See 18 U.S.C. § 1951; see also, Jack v. Stubblefield, No. 5:09-CV-00046, 2009 WL 1809931, at *2 (W.D. Va. June 22, 2009) ("The Hobbs Act, codified at 18 U.S.C. § 1951, is also a criminal statute.  It imposes criminal penalties of fines and imprisonment for obstructing, delaying, or affecting commerce by robbery or extortion.") (citations omitted), aff'd, 342 F. App'x 902 (4th Cir. 2009).  As a private citizen, plaintiff does not have the authority to enforce § 1951.  Thus, plaintiff's claims pursuant to the Hobbs Act are DISMISSED against all defendants.  See 28 U.S.C. § 1915(e)(2)(B) ("Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted . . . .").

b.      FTCA

To the extent plaintiff alleges claims pursuant to the Federal Trade Commission Act (FTCA), 15 U.S.C. § 45(a)(1), he fails to state a claim because the FTCA does not include a private right of action.  See Summey v. Ford Motor Credit Co., 449 F. Supp. 132, 135 (D.S.C.1976) ("It is well-settled that there is no private, federal claim for which this court can grant relief for violations of the Federal Trade Commission Act."), aff'd, 573 F.2d 1306 (4th Cir. 1978); Marshall v. Miller, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) (holding that "the Legislature intended trebling of

any damages assessed to be automatic once a violation is shown" and providing a history of the adoption of the UDTPA). Thus, plaintiff's FTCA claims are DISMISSED against all defendants for failure to state a claim. See 28 U.S.C. § 1915(e)(2)(B).

   c. Defendant Guirguis

  Defendant Guirguis asserts that plaintiff's allegations against her fail to state a claim pursuant to North Carolina's Unfair or Deceptive Trade Practices Act ("UDTPA"), N.C. Gen Stat. § 75-1, *et seq.* Section 75-1.1(a) provides that "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are declared unlawful." To succeed with an UDTPA claim, a plaintiff must show: "(1) an unfair or deceptive act or practice . . . , (2) in or affecting commerce, (3) which proximately caused actual injury to plaintiff or to his business." Huff v. Autos Unlimited, Inc., 124 N.C. App. 410, 413, 477 S.E.2d 86, 88 (1996) (quoting Spartan Leasing, Inc. v. Pollard, 101 N.C. App. 450, 461, 400 S.E.2d 476, 482 (1991)).

  Pursuant to § 75–1.1(b), the term "commerce" "includes all business activities, however denominated, but does not include professional services rendered by a member of a learned profession." N.C. Gen. Stat. § 75–1.1(b). As a result, professional services rendered by an attorney in the course of her practice are exempt under the statute and may not form the basis of an unfair or deceptive trade practices claim. See Sharp v. Gailor, 132 N.C. App. 213, 217, 510 S.E.2d 702, 704 (1999). Thus, plaintiff fails to state a UDTPA against Guirguis.

  As for plaintiff's § 1983 claims against defendant Guirguis, such claims fail. The party charged with a constitutional deprivation must be a state actor. Debauche v. Trani, 191 F.3d 499, 506-507 (4th Cir. 1999). Private attorneys do not act under color of state law and, therefore, are not

17

amendable to suit under § 1983.  See Deas v. Potts, 547 F.2d 800 (4th Cir. 1976).  In this case,

plaintiff fails to allege facts to establish that defendant Guirguis, a private attorney, is a state actor.

See id.; see also, Rodgers v. Waste Indus., Inc., No. 4:12–CV–294–FL, 2013 WL 4460265, at *4

(E.D.N.C. Aug. 19, 2013) (explaining that private action may be found to constitute state action

"(1) when the state has coerced the private actor to commit an act that would be unconstitutional if

done by the state; (2) when the state has sought to evade a clear constitutional duty through

delegation to a private actor; (3) when the state has delegated a traditionally and exclusively public

function to a private actor; or (4) when the state has committed an unconstitutional act in the course

of enforcing a right of a private citizen.") (quoting Andrews v. Fed. Home Loan Bank, 998 F.2d 214,

217 (4th Cir. 1993)), aff'd, 553 F. App'x 332 (4th Cir. 2014); Philips v. Pitt Cnty. Mem'l Hosp., 503

F. Supp. 2d 776, 780 (E.D.N.C. 2007) ("Liability under Section 1983 extends only to persons acting

under color of state law . . . ."), aff'd, 572 F.3d 176 (4th Cir. 2009).  Moreover, plaintiff's conclusory

allegations that defendant Guirguis somehow conspired with state or federal officers to violate his

constitutional rights are not sufficient to state a claim pursuant to § 1983.  See Iqbal, 556 U.S. at

677-679; Simmons v. Sacramento County Superior Court, 318 F.3d 1156, 1161 (9th Cir. 2003)

(conclusory allegations of conspiracy between private attorney and state officer insufficient to

support § 1983 claim).  Thus, the court GRANTS Guirguis' motion to dismiss plaintiff's § 1983

claims.

The court now addresses plaintiff's RICO claims against defendant Guirguis.  Plaintiff

alleges RICO claims pursuant to §§ 1962(a),(c), (d) and 1964(c).[4]  Section 1962(a) prohibits the

---

[4] Section 1964(c) provides:  "Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue . . . and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee."  18 U.S.C. § 1964(c).

acquisition of legitimate businesses through racketeering activity, or through the use of proceeds from racketeering activities. See 18 U.S.C. § 1962(a). Section 1962(c) prohibits conducting the affairs of an enterprise engaged in racketeering activity, and § 1962(d) makes it illegal to conspire to violate sections 1962(a), (b), or (c). Id. § 1962(c) and (d). Each of the RICO statute's subsections require a showing of a "pattern of racketeering activity." See 18 U.S.C. § 1962(a)-(d); Professionals, Inc. v. Berry, No. 90–3005, 1991 WL 5940, at *1 (4th Cir. Jan. 25, 1991). Specifically, a RICO plaintiff bringing an action pursuant to § 1964(c) "must adequately plead at least two predicate acts of racketeering." Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 233 (4th Cir. 2004); 18 U.S.C. §1961(5).

Here, plaintiff's allegations against defendant Guirguis stem from plaintiff's dissatisfaction with her legal representation and plaintiff has not demonstrated a pattern of racketeering activity with sufficient specificity. See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians, 155 F.3d 500, 505 (4th Cir. 1998) (a plaintiff must allege a continuing pattern and a relationship among the defendant's activities showing they had the same or similar purposes). Plaintiff's wholly conclusory allegations concerning a pattern of racketeering activity are nothing more than mere "labels and conclusions." Twombly, 550 U.S. at 555; Giarratano, 521 F.3d at 304 n.5.

To the extent plaintiff seeks to allege a conspiracy, he must allege "that the [defendants] acted jointly in concert and that some overt act was done in furtherance of the conspiracy which resulted in [plaintiff's] deprivation of a constitutional right." Hinkle v. City of Clarksburg, 81 F.3d 416, 421 (4th Cir. 1996). Mere conclusory allegations of a conspiracy do not demonstrate the "meeting of the minds" element. See, e.g., Simmons v. Poe, 47 F.3d 1370, 1377 (4th Cir. 1995);

Twombly, 550 U.S. at 555. Because plaintiff fails to plausibly allege a "meeting of the minds" between Guirguis and the federal or state defendants, plaintiff failed to state a RICO claim against Guirguis.

Finally, the court addresses plaintiff's remaining North Carolina state claims against defendant Guirguis. Plaintiff's amended complaint is not a model of clarity. However, he makes clear that his North Carolina state claims are limited to alleged violations of the UDTPA and violations of the North Carolina State Constitution, Article 1 §§ 17, 19, 27. (Am. Compl. p. 9.) Having resolved plaintiff's UDTPA claim, the court now focuses on the alleged violations of the North Carolina State Constitution.

As set forth above with respect to plaintiff's federal constitutional claims against defendant Guirguis, "[t]he civil rights guaranteed by the Declaration of Rights in Article I of [the North Carolina State] Constitution are individual and personal rights entitled to protection against state action." Corum v. University of North Carolina, 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992). "[T]he Constitution itself does not recognize or create rights which may be asserted against individuals." Id. at 787, 413 S.E.2d at 292–93. Because plaintiff has not alleged any state action on behalf of defendant Guirguis, plaintiff's North Carolina State Constitutional claims are DISMISSED for failure to state a claim.[5]

d. Defendant Manning

Defendant Manning moves to dismiss plaintiff's Fourth Amendment claim pursuant to Rule 12(b)(6) for failure to state a claim. Plaintiff, in his complaint, asserts that defendant Manning violated his rights pursuant to the Fourth Amendment in connection with the placement of a global

---

[5] The court does not construe plaintiff's complaint as stating a negligence claim against defendant Guirguis. (See Am. Compl. p. 9.).

positioning system ("GPS") on plaintiff's vehicle and surveillance equipment at plaintiff's home and warehouse.

The Fourth Amendment provides in pertinent part that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The United States Supreme Court in United States v. Jones, __ U.S. __, 132 S. Ct. 945 (2011), held that the government's "installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes a 'search'" within the meaning of the Fourth Amendment. Id. at 945. The government violates the Fourth Amendment when it conducts surveillance into private areas. See Kyllo v. United States, 533 U.S. 27, 34 (2001)

Defendant Manning argues that plaintiff failed to allege that any surveillance was done without his knowledge or consent. Plaintiff, however, states that he did not "willingly" consent to the installation of surveillance equipment on his property. (Pl.'s Resp. (DE 83), p. 2.) The statements made by defendant Manning and plaintiff are at odds. Accordingly, based upon the current record, plaintiff states a Fourth Amendment claim against defendant Manning. See Kyllo, 533 U.S. at 34. Thus, the court DENIES Manning's motion to dismiss plaintiff's Fourth Amendment claim.

To the extent defendant Manning's motion to dismiss could be construed as seeking dismissal of plaintiff's remaining claims, Manning's motion is DENIED. Plaintiff has sufficiently alleged facts in his complaint and his response to Manning's motion to dismiss to state the following claims against Manning: an Eighth Amendment claim for failure to protect; a Fourteenth Amendment due process claim; a Thirteenth Amendment claim for involuntary servitude; a RICO claim; and violations of North Carolina's State Constitution Article I, §§ 17, 19, 27.

e.      Official Capacity Claims Against the Federal Defendants

The federal defendants assert that the court lacks subject matter jurisdiction to hear plaintiff's claims against them in their official capacities.  The federal defendants are correct, <u>Bivens</u> claims for monetary damages against the United States, federal agencies, or public officials acting in their official capacities are barred by the doctrine of sovereign immunity.  <u>See</u> <u>FDIC v. Meyer</u>, 510 U.S. 471, 475, 484–86 (1994); <u>Doe v. Chao</u>, 306 F.3d 170, 184 (4th Cir. 2002) ("[A] <u>Bivens</u> action does not lie against either agencies or officials in their official capacities."); <u>Reinbold v. Evers</u>, 187 F.3d 348, 355 n. 7 (4th Cir. 1999).  However, a plaintiff may seek injunctive relief against a federal officer in his or her official capacity.  <u>See</u> <u>Kirby v. City of Elizabeth City, N.C.</u>, 388 F.3d 440, 452 n. 10 (4th Cir. 2004); <u>see also</u>, <u>Everett v. Francis</u>, No. 5:07CV135, 2009 WL 2971359, * 4 (N.D.W. Va. Sep. 16,  2009) ("[T]he <u>Bivens</u> requirement that suits do not lie against federal officers in their official capacity contemplates claims for monetary relief, not injunctive relief.").  Based upon the foregoing, the court GRANTS the federal defendants' motion to dismiss plaintiff's official capacity claims seeking monetary damages.  Plaintiff's official capacity claims seeking injunctive relief remain pending.

f.      Individual Capacity Claims Against the Federal Defendants

Regarding plaintiff's allegation that the federal defendants violated the Thirteenth Amendment, the federal defendants assert that a <u>Bivens</u> remedy does not extend to plaintiff's Thirteenth Amendment claim.  Plaintiff, however, appears to bring his Thirteenth Amendment claim pursuant to 42 U.S.C. § 1981, which is actionable.  <u>See</u> <u>United States v. Kozminski</u>, 487 U.S. 931, 948 (1988) ("[I]t is possible that threatening ... an immigrant with deportation could constitute the threat of legal coercion that induces involuntary servitude [as defined by the Thirteenth

Amendment].”); see also, Gordon v. Tygart Valley Regional Jail, No. 3:12CV34, 2013 WL 786480, at *6 (N.D.W. Va. Feb. 4, 2013) (“§ 1981 was originally adopted by Congress immediately after the Civil War on April 9, 1866. It was enacted by virtue of the Thirteenth Amendment and was intended to rectify some of the disabilities of slavery.”); Westray v. Porthole, Inc., 586 F. Supp. 834, 839 (D. Md. May 22, 1984) (“The defendants are correct that the Thirteenth Amendment does not give rise to an independent cause of action. . . . The plaintiffs instead must avail themselves of the remedies, such as 42 U.S.C. § 1981, that Congress has created under the power granted to it in that amendment.”) (internal citations omitted). Thus, the court DENIES the federal defendants’ motion to dismiss on this ground.

The court next turns to the federal defendants’ contention that plaintiff may not sue them pursuant to the Fourteenth Amendment. The Fourteenth Amendment is implicated only when there is state action. See U.S. Const. amend. XIV, § 1. Because plaintiff has brought his Fourteenth Amendment claims against federal defendants, plaintiff challenges federal and not state action. United States v. Jones, 735 F.2d 785, 792 n. 8 (4th Cir. 1984) (“Because the defendants challenge federal rather than state action, they claim protection under the fifth amendment, not the fourteenth amendment.”); see also, Leon-Ayala v. Lamanna, No. CA 304-22888, 2005 WL 5164226, at * n. 5 (D.S.C. Sept. 16, 2005) (“The Fourteenth Amendment applies to state actions and not federal actions.”), aff’d, 177 F. App’x 301 (4th Cir. 2006). Thus, plaintiff’s Fourteenth Amendment claims against the federal defendants are DISMISSED for failure to state a claim. The court, instead, construes plaintiff’s claims against the federal defendants as alleging due process violations pursuant to the Fifth Amendment to the United States Constitution.

The court next considers plaintiff's supervisor liability claims against defendants Holder, the

DEA Director, and the ICE Director. A supervisor may be liable for the actions of a subordinate if:

> (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk' of constitutional injury to citizens like the plaintiff;
>
> (2) the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3) there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

Plaintiff alleges that defendants Holder, the DEA Director, and the ICE Director have

personally promulgated policies that violate his constitutional rights. This is sufficient to state a

claim against these defendants. See Fisher v. Washington Metropolitan Area Transit Author., 690

F.2d 1133, 1142-43 (4th Cir. 1982) (finding that § 1983 requires a showing of defendant's personal

fault either based on the defendant's personal conduct or on another's conduct in execution of the

defendant's policies or customs), abrogated on other grounds by, Cnty. of Riverside v. McLaughlin,

500 U.S. 44 (1991). Plaintiff also alleges that he complained to the supervisory defendants about

their subordinate's unconstitutional actions, and that defendants ignored plaintiff's complaints.

These allegations state a supervisor liability claim. See Shaw, 13 F.3d at 799. For these reasons,

defendants' motion to dismiss this claim is DENIED.

The court now turns to the statute of limitations defense argued by defendants Brant, Halvas,

Atwell, and the ICE director. Bivens actions are governed by the state statute of limitations

applicable to general personal injury cases in the state where the alleged violations occurred. Owens

v. Okure, 488 U.S. 235, 239–40 (1989). North Carolina has a three-year statute of limitations for personal injury actions. N.C. Gen. Stat. § 1-52(5); see Brooks v. City of Winston-Salem, 85 F.3d 178, 181 (4th Cir. 1996).

With respect to plaintiff's excessive force claim, plaintiff states that defendants Brant and Halvas drove him out to a "private unfamiliar area" and assaulted him on February 23, 2009. (Pl.'s Resp. (DE 96), p. 4.) Accordingly, the statute of limitations for this claim began to run on February 23, 2009, and expired three years later on February 23, 2012. Plaintiff did not filed this action until October 22, 2013.[6] The excessive force claim thus is barred by the statute of limitations.

As a defense to the running of the statute of limitations, plaintiff asserts that he is entitled to equitable tolling because he is a native of Honduras and unfamiliar with American "jurisprudence or law." (Pl.'s Resp. (DE 96), p. 12.) Federal courts apply the forum state's law regarding tolling, including equitable tolling, when application is not inconsistent with federal law. See Hardin v. Straub, 490 U.S. 536, 537–39 (1990). The Fourth Circuit Court of Appeals has specifically stated that "[e]ven in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." United States v. Sosa, 364 F.3d 507, 512 (4th Cir. 2004). The court further notes that although plaintiff was not a citizen of the United States at the time the cause of action accrued, he possessed enough legal knowledge to run three businesses in the United States. Thus, plaintiff is not entitled to equitable tolling, and this claim is time-barred.

---

[6] Providing plaintiff the benefit of the mailbox rule, the court deems his complaint, dated October 22, 2013, but filed on October 25, 2013, to be filed on October 22, 2013. See Houston v. Lack, 487 U.S. 266, 276 (1988) (holding that a pro se prisoner's notice of appeal is filed at the moment it is delivered to prison authorities for mailing to the district court).

To the extent the federal defendants contend that any of plaintiff's remaining claims against them are time-barred, the record is insufficient to make such a determination at this time. Defendants, however, may raise this issue at a later date on a more fully developed record.

Finally, as for plaintiff's remaining claims against the federal defendants, such claims are the subject matter of the federal defendants' motion for summary judgment. As stated, the court granted plaintiff a continuance pursuant to Rule 56(d) and declined to construe the federal defendants' motion as a motion for summary judgment. To the extent the federal defendants move to dismiss any of the remaining claims pursuant to Rule 12(b)(6), the court is required to liberally construe plaintiff's allegations and the parties' conflicting allegations with respect to the events in this case preclude the court from making any further determinations on this record. See Gordon v. Leeke, 574 F.2d 1147, 1151 (4th Cir. 1978) ("It is now established doctrine that pleadings should not be scrutinized with such technical nicety that a meritorious claim should be defeated, and even if the claim is insufficient in substance, it may be amended to achieve justice."). For these same reasons, the court DENIES the federal defendants' assertion of the affirmative defense of qualified immunity without prejudice. If need be, the court will entertain a motion for summary judgment raising the defense on a more fully developed record.

## CONCLUSION

Based on the foregoing, the court orders as follows:

1) The court DISMISSES plaintiff's claims pursuant to the Hobbs Act and FTCA against all defendants pursuant to 28 U.S.C. § 1915(e)(2)(B);

2) Defendant Manning's motion to dismiss (DE 54) is DENIED. Plaintiff's claims pursuant to the Eighth, Fifth, Thirteenth, and Fourth Amendments, as

26

well as plaintiff's RICO and North Carolina State Constitutional claims remain pending against Manning;

3) Defendant Guirguis' motion to dismiss (DE 76) is GRANTED, and defendant Guirguis no longer is a defendant in this action;

4) The remaining federal defendants' motion to dismiss (DE 88) is GRANTED IN PART AND DENIED IN PART, as set forth herein. In particular, plaintiff's claims pursuant to the Eighth, Fifth, Thirteenth, and Fourth Amendments, as well as plaintiff's RICO and North Carolina State Constitutional claims remain pending against the federal defendants. Plaintiff's official capacity claims for injunctive relief only also remain pending against these defendants. The remaining claims against the federal defendants are DISMISSED;

5) Plaintiff's motion for an extension of time pursuant to Rule 56(d) (DE 96) is GRANTED. The discovery deadline for the federal defendants now is **May 2, 2016**, and the dispositive motion deadline is **June 2, 2016**;

6) Plaintiff's motion to appoint counsel (DE 99) is DENIED;

7) The clerk of court is DIRECTED to substitute Tom Halvas for the party plaintiff referred to as the "unidentified ICE agent" in his amended complaint;

8) Finally, plaintiff's filings in this action are voluminous and consist of repetitive and superfluous statements, allegations and materials. Plaintiff is cautioned that filings of this nature serve to impede and not assist the

adjudication of this action. The court DIRECTS plaintiff's attention to Federal Rule of Civil Procedure 8 which simply requires a short and plain statement of a claim.

SO ORDERED, this the 23rd day of March, 2016.

LOUISE W. FLANAGAN
United States District Judge

28